ROBERT C. MARTIN, APPELLANT, *v.* JACOB S. RECTOR, RESPONDENT.

*Ejectment — where a wife is living upon a farm with her husband, what evidence requires the submission to the jury of the question as to which is the actual occupant thereof.*

This action was brought, in 1860, by the plaintiff, as the assignee of a lessor, to recover the possession of certain premises for the non-payment of the rent reserved by the lease. It appeared that in 1856, one Lansing, who then owned the leasehold interest, went to the defendant's house and told the defendant's wife, who was Lansing's daughter, that if she would move upon the premises he would make her a present of the place; that she could go on and build upon it and he would give her a deed whenever she called for it. The defendant and his wife moved upon the place and lived there as husband and wife for twenty-two years. Buildings were put up and other improvements made. The wife had no separate estate when she went there. She hired the maid-servants, and he the men on the farm. He managed the farm and sold the produce. The defendant was examined as a witness for the plaintiff before trial and testified that he was in the possession of the farm at the time of the commencement of the action. While the action was pending he and his wife made an affidavit in which they stated that they were occupants of the premises.

*Held,* that the evidence would not have justified the court in holding as a matter of law that the defendant, the husband, was the actual occupant of the premises, and that it properly submitted that question to the jury.

That a verdict finding that he was not the actual occupant would not be disturbed.

APPEAL from a judgment in favor of the defendant, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Samuel Hand,* for the appellant.

*George W. Miller,* for the respondent.

LEARNED, P. J.:

This is an action of ejectment. The complaint simply alleges the plaintiff's ownership in fee and the defendant's unlawful possession.

On the trial the plaintiff claimed to recover for the non-payment of rent upon a lease, claiming as the grantee of the original lessor. It does not seem to be disputed that he is such grantee. The interests of the original lessee were shown to have been transferred, by successive conveyances, to one Martinus Lansing, who became full owner thereof in 1845. Non-payment of the rent falling due in 1859 was shown. The action was commenced and issue joined in 1860. The issue was tried in 1882. Upon the trial the court submitted to the jury the question whether Jacob S. Rector was the actual occupant of the premises at the time of the commencement of the action, charging them, in substance, that if he was, then the plaintiff was entitled to recover; that if he was not, then the verdict should be for the defendant. The jury found for the defendant, and further found that Jacob S. Rector was not in actual occupation at the time of the commencement of the action. The plaintiff appeals and insists that a verdict should have been directed against the defendant.

It will be seen then, that so far as the evidence disclosed, the legal rights of lessee were in Martinus Lansing at the commencement of the action. It was proved, in substance, that about 1856 Lansing came to defendant's house and told defendant's wife (who was Lansing's daughter) that if she would move down there (that is upon these premises) he would make her a present of the place; that she could have it; that she could go on and build upon it and it was her's; that she could have a deed by going to her uncle; that he, Martinus, would draw up a deed for her and she could get it by calling for it.

Upon this statement the defendant and his wife moved upon the premises about 1856 and lived there twenty-two years. They lived there as husband and wife. Buildings were put up and other improvements made. She had no separate property when she went there. She hired the maid servants and he hired the men on the farm. He sold the produce and managed the farm.

In 1863, after the commencement of this action, the defendant was examined on plaintiff's behalf, and testified that he was in pos-

session of the premises at the commencement of the action. In 1879 the defendant and his wife made an affidavit that they were occupants of the premises.

Now, upon this proof, which might be stated more fully, the question is whether the court could have assumed, as a matter of law, that the defendant was the actual occupant. The testimony given in 1863 was not an estoppel, because it was given after the action had been commenced. It was, of course, important evidence for the jury. The same may be said of the affidavit of 1879.

The case of *Alexander* v. *Hard* (64 N. Y., 230), cited by plaintiff, only decides that in a case somewhat analogous the court could not hold, as a matter of law, that the husband was not in possession so as to maintain trespass. It shows that in that case possession was a question for the jury.

And when we are considering whether the evidence conclusively shows that the defendant was in possession, we must take into account the title or claim of title under which either the defendant or his wife went into possession. Martinus Lansing, the father of defendant's wife, owned the leasehold. These parties went upon the premises under the statement by Lansing to his daughter that the farm was hers, that she should go on and improve it. She often claimed to own it in her husband's presence. The plaintiff endeavors to distinguish this transaction from the similar transaction in *Freeman* v. *Freeman* (43 N. Y., 35), by urging that in this case there was only a parol gift, and in the Freeman case there was a parol promise in consideration of improvements to be made. But an examination of that case will show that the decision rests upon the fraud which would be practiced on the person who should be induced to make improvement on the faith of the parol promise. And it is difficult to see why the fraud would not be equally great when the owner says: "I give you the land, go on and improve it," as when he says: "I will give you the land if you go on and improve it." In the present case the promise was that Lansing would give a deed to his daughter, and on the strength of that promise the defendant or his wife took possession.

We have then this circumstance, characterizing the acts of the parties, viz.: That the possession taken and the improvements made were under a parol gift, or promise to give the land, not to

the defendant but to his wife. And under *Freeman* v. *Freeman* (*ut supra*), this circumstance, followed by the expenditure of money on the premises, might give the wife a right to a deed.

It is not uncommon at this day that the legal title to the home of the family is in the wife. When such is the case, and when the husband and wife lived together as such in the house to which she has the title, if an action of ejectment should be brought against the husband, could the court say, as a matter of law, that his acts, as the head of the family, made him the actual occupant of the premises ? Would it not, at least, be necessary to submit this point to the jury ?

The learned justice charged that, where a husband is living with his wife and family on a farm, in the absence of inconsistent facts, the presumption is that he is in possession and occupancy, the fact being unexplained and unqualified. So that he threw on the defendant the burden of disproving this presumption by explanatory facts. But the doctrine claimed by the plaintiff seems to require us to hold that a wife, who has title to property, cannot be in the actual occupation thereof, if she and her husband live thereon, as husband and wife ; each managing the appropriate part of the necessary business.

It may be difficult, we admit, to determine in such cases who is in occupation. But a plaintiff need seldom have any difficulty, if he inquires beforehand of the party he is about to sue, and thus obtains an estoppel. And very possibly we may think the jury came to an incorrect conclusion. But that is not the point. Were there not inferences to be drawn which were not certain and incontrovertible and which might be differently made by different minds ? (*Hart* v. *Hudson River Bridge Co.*, 80 N. Y., 622.)

We see no error in the case and think the judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOARDMAN and BOOKES, JJ.

Judgment affirmed, with costs