## MICHAEL KAVANAGH, RESPONDENT, *v.* A. L. BARBER, APPELLANT.

*Nuisance — right of action therefor, in a married man residing in his wife's house.*

A married man, residing with his children and wife in a house owned by the latter, may maintain an action to recover damages resulting from a nuisance in the vicinity thereof where it inflicts a particular injury upon him.

Although not the owner, nor in the legal sense of the term, under the married woman's acts, *the* occupant, or in possession of the premises upon which the injury is received, he is *an* occupant of the premises, with the duty as well as the privilege of such occupancy, so long as it is the home of his wife and family, and has the same right to be protected in his enjoyment of it as if the title and legal possession thereof had been in him.

APPEAL by A. L. Barber, the defendant, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Erie on the 8th day of November, 1889, in favor of the plaintiff, after a trial at the Erie County Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for the sum of $200.

*Spencer Clinton*, for the appellant.

*H. C. Day*, for the respondent.

DWIGHT, P. J.:

The action was to recover for damage alleged to have resulted to the plaintiff from a nuisance maintained by the defendant. The complaint alleges "that for about fourteen years last past this plaintiff has resided with his family, consisting of his wife and five children, in a house and lot owned by plaintiff's wife, on the northerly side of Fourth street in the city of Buffalo;" that about six years ago the defendant erected on the same street, and opposite the plaintiff's house, and has since maintained, an establishment for the manufacture of paving and roofing material, where he heats and boils asphaltum and other substances, which emit offensive and unwholesome gases and stenches, which render the air in the locality of the plaintiff's dwelling foul and unwholesome; that, by reason thereof, plaintiff and his family have been put to inconvenience, discomfort, sickness and damage; have been obliged to keep the

doors and windows of their dwelling closed day and night, even in hot weather; that their food has been impregnated by such gases so as to be disagreeable to the taste and unwholesome; that fine sand and soot and other matter engendered in the defendant's factory have been blown into the plaintiff's dwelling to such an extent that plaintiff and his family have been deprived of the use of the front room; that plaintiff and his family have been deprived thereby of the ordinary and comfortable use and enjoyment of said dwelling and premises; that the plaintiff's wife and family have been made sick by said smells, sand and stenches, and one of plaintiff's daughters died from sickness caused or aggravated thereby; that the plaintiff has been deprived of the services of his wife and children by reason thereof, and has been compelled to pay for medical attendance on account of such sickness, and that by reason of the matters aforesaid the plaintiff has sustained loss and damage in the sum of $10,000.

The answer admits the erection and maintenance by the defendant of the establishment and apparatus for the manufacture of paving and roofing material, from asphaltum and other substances, and that he therein heats and boils asphaltum and other substances, but denies that he has done or does so in violation of any rights of the plaintiff, and denies the evil effects and results therefrom alleged in the complaint.

The principal contention of the defendant on this appeal is that the plaintiff could not maintain the action because he was not the owner of the house and lot where the injury complained of was received. It is true that the plaintiff cannot recover for any injury to or depreciation in the value of the premises the title to which, not only, but the possession also is in his wife. Though the head of the family, he is not "in any legal sense the possessor or occupant of the house or land in or upon which the family reside." (*Martin* v. *Rector,* 101 N. Y., 77.) But it is a mistake to suppose that this action is necessarily confined to injuries to the realty only. Under the technical definition of the common law the term "private nuisance" was, no doubt, chiefly, if not exclusively, applied to such acts as were "to the hurt or annoyance of the lands, tenements or hereditaments of another" (3 Black. Com., 216), and a common or public nuisance could ordinarily be prosecuted only by indictment

or in the name of the crown or people. But whether by enlarge-
ment of the definition of private nuisance or by extending the right
of private action to cases of common or public nuisance, it is certain
that the individual action is not by any means confined to cases
which affect the realty. The definition in Southerland on Damages,
quoted by counsel for the appellant (vol. 3, p. 394), is much in point.
It is there said that a private nuisance "may be any wrongful act
which destroys or deteriorates the property of another or interferes
with his lawful use or enjoyment thereof, *or* any act which unlaw-
fully hinders him in the enjoyment of a common or public right
and thereby causes him a special injury." By which is apparently
intended that the former is a private nuisance because it violates a
private right, the latter is a private nuisance because, though the
violation is of a public right, it inflicts a particular injury upon a
private person.

In *Lansing* v. *Smith* (4 Wend., 9) Chancellor WALWORTH said
that if a person sustains no damage but that which the law *presumes*
any citizen to sustain because it was a common nuisance, no action
will lie; "but every individual who receives *actual* damage from a
nuisance may maintain a private suit for his own injury, although
there may be many others in the same situation." In *Francis* v.
*Schoellkopf* (53 N. Y., 152) GROVER, J., said: "The rule is, that one
erecting or maintaining a common nuisance is not liable to an action
at the suit of one who has sustained no damage therefrom, except such
as is common to the entire community, yet he is liable at the suit of
one who has sustained damage peculiar to himself; no matter how
numerous the persons may be who have sustained this peculiar
damage, each is entitled to compensation for his injury." And the
cases are very numerous to the same effect. (*Peck* v. *Elder*,
3 Sandf. Supr. Ct., 126; *Stetson* v. *Faxon*, 19 Pick, 147; *Abbott* v.
*Mills*, 3 Vt., 529.)

Whether, then, the nuisance in this case can be denominated
public or private, the plaintiff had his action for the particular
injury sustained by him.

But we think the case was clearly within the sense of the defini-
tion first given of a private nuisance. Though not the owner, nor,
in the legal sense of the term, under the married woman's acts, *the*
occupant, or in possession of the premises upon which the injury

was received, he was *an* occupant of the premises, with the duty as well as the privilege of such occupancy, so long as it was the home of his wife and family. So long it was his home he had as good right to be protected in his enjoyment of it as if the title and legal possession had been in him. It was upon this theory that the court below sustained the action and submitted the case to the jury.

The case made was of an aggravated nuisance. The damages recoverable by the plaintiff were restricted by the court to such as were personal to himself, and the verdict was, in our opinion, far from excessive.

We think the judgment should be affirmed.

MACOMBER, J., concurred; CORLETT, J., not sitting.

Judgment appealed from affirmed.